UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>R. FARLEY, ET AL.,<br><br>　　　　　Defendant(s). | Case No. CV 20-4490-PA (KK)<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## I.

## **INTRODUCTION**

Plaintiff Lance Williams ("Plaintiff"), proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against correctional officers R. Farley, D. Arebalo, M. Williams, J. Graves, and D. Davis ("Defendants") each in their individual and official capacities, alleging violations of his First, Eighth, and Fourteenth Amendment rights. For the reasons discussed below, the Court dismisses the Complaint with leave to amend.

///

///

///

///

## II.

## **BACKGROUND**

On May 19, 2020, Plaintiff, an inmate at California Men's Colony – East ("CMC") constructively filed[1] the instant Complaint against Defendants, who are all correctional officers at CMC, in their individual and official capacities. ECF Docket No. ("Dkt.") 1. Plaintiff alleges (1) a First Amendment retaliation claim against all Defendants; (2) an Eighth Amendment excessive force claim against defendant Farley; (3) an Eighth Amendment "threat to safety" claim against defendants Farley, Arebalo, and Graves; and (4) a Fourteenth Amendment due process claim against defendants Williams, Graves, and Davis. Id. at 3-4.

The Complaint sets forth the following allegations:

In Claim One, Plaintiff alleges on April 2, 2020, Plaintiff signed up for a 1:15 p.m. time slot to use the phone to call his attorney. Id. at 5. Shortly thereafter, Plaintiff "received a priority medical pass for 1:00 p.m." Id. Later that day, Plaintiff discovered defendant Farley, who was not on "good terms" with Plaintiff due to Plaintiff having previously filed grievances against him, had "scratched" Plaintiff's name off the phone list. Id. Plaintiff questioned defendant Farley as to why his name was scratched off the list and defendant Farley responded that Plaintiff's priority medical pass conflicted with the phone time, which Plaintiff alleges "was not true." Id. Plaintiff questioned defendant Farley about "the policy that says officers are supposed to scratch names off" and defendant Farley "could not provide the policy." Id. Plaintiff then informed defendant Farley he "would be filing a 602 appeal grievance to address this policy and [defendant Farley's] actions." Id. at 5-6.

---

[1] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); see Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule" applies to Section 1983 suits filed by pro se prisoners").

1   In Claim Two, Plaintiff alleges on April 6, 2020, defendant Farley issued a
2 Rules Violation Report ("RVR") against Plaintiff for "unlawful influence" which
3 noted "[Plaintiff's] threats [were] valid due to [Plaintiff] having filed staff complaints
4 on me before." <u>Id.</u> at 7.  Plaintiff alleges defendant Farley issued the RVR "in
5 retaliation in violation of [Plaintiff's] 1st Amendment rights" and in violation of
6 Plaintiff's right to file grievances. <u>Id.</u> at 7-9.
7   On April 14, 2020, Plaintiff alleges he appeared at a hearing conducted by
8 defendant Arebalo as the Senior Hearing Officer regarding the RVR. <u>Id.</u> at 9.
9 Plaintiff alleges defendant Arebalo found him guilty of the RVR, but claims the
10 "preponderance of evidence standard was not met." <u>Id.</u>  Plaintiff further alleges
11 defendant Farley's responses to questions about the RVR contained "lies" and
12 "assumptions" and "malicious vindictive" intent. <u>Id.</u>  Plaintiff alleges defendant
13 Arebalo told Plaintiff he could appeal the decision, but stated "if I was you I wouldn't
14 it may get you fucked over and hurt." <u>Id.</u> at 10.
15   After the hearing suspended for the day, Plaintiff alleges defendant Farley
16 called Plaintiff into a dark office, told Plaintiff to close the door, and "attacked
17 [Plaintiff], grabbing him by the neck squeezing it and punching [Plaintiff] in his
18 stomach," and stated "'if you file any more appeals on me or even think about filing
19 any lawsuits[,] and I'll know because I talk to the library staff[,] I'll make sure you end
20 up in the hole, there may be a mysterious kite dropped on you" <u>Id.</u> at 10.
21   In Claim Three, Plaintiff alleges on April 24, 2020 he was taken to
22 administrative segregation ("ad-seg") because a note was found in the prison mail
23 system stating Plaintiff was "going to be stabbed due to him filing too many 602
24 appeal grievances." <u>Id.</u> at 11.  Plaintiff alleges he "has reason to believe this note and
25 entire process was conjured up by [defendant] Farley" and other officers. <u>Id.</u>  Plaintiff
26 further alleges that on April 28, 2020, while he was in ad-seg, defendant Farley came
27 to his door and said, "I told you we would get you and if you think about writing any
28 602's or lawsuits I can still have you cut up back here . . . look where you are how you

3

think you got back here". Id. Plaintiff alleges defendant Farley then "pointed at him as if to shoot a gun" and walked away. Id. at 11.

In Claim Four, Plaintiff alleges that at his April 30, 2020 "annual", defendant Williams, as the Senior Hearing Officer, rescinded Plaintiff's "level 1 33% override endorsement" and refused to discuss Plaintiff's upcoming "non-violent halftime parole date" in retaliation for Plaintiff filing "grievance 602's and civil actions" against defendant Farley. Id. at 12. Plaintiff alleges before the hearing, defendant Williams told Plaintiff he was rescinding the endorsement because "Farley says you need to be taught a lesson." Id. In addition, Plaintiff alleges defendant Williams violated Plaintiff's due process rights when he refused to provide a staff assistant to help Plaintiff prepare for the hearing, but falsely documented that defendant Graves provided assistance. Id. at 13. Plaintiff alleges he filed a Form 22 inmate request to defendant Graves requesting information "about his involvement with [Plaintiff's] hearing", but defendant Graves responded to Plaintiff by stating "don't involve me in your 602 and lawsuit shit I'm in control of your life back here . . . it's nothing for you to end up hanging you see what happen[ed] to Epstein". Id. at 13.

Plaintiff further alleges defendant Davis "endorsed [Plaintiff] to a facility far from his county" as part of a "campaign of harassment and retaliation" and in violation of Plaintiff's due process rights. Id. at 13.

Plaintiff seeks punitive and compensatory damages as well as an order requiring his "RVR be reversed, dismissed and purged" from Plaintiff's C-file; restoration of his 30 days of lost credit and deletion of four "classification score points"; a change to his classification of "33% time credit rating," and "transfer to a level one minimum support facility". Id. at 14.[2]

---

[2] Any claim that would necessarily imply the invalidity of Plaintiff's disciplinary hearing for the RVR and the resulting deprivation of good-time credits falls within the "exclusive domain" of habeas corpus and is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 2371, 129 L. Ed. 2d 383 (1994). Nettles v. Grounds, 830 F.3d 922, 928 (9th Cir. 2016).

### III.
### **STANDARD OF REVIEW**

Where a plaintiff is proceeding in forma pauperis, a court must screen the complaint under 28 U.S.C. § 1915 and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether a complaint fails to state a claim for screening purposes, a court applies the same pleading standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of

1  underlying facts to give fair notice and to enable the opposing party to defend itself
2  effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

3  "A document filed pro se is 'to be liberally construed,' and a 'pro se complaint,
4  however inartfully pleaded, must be held to less stringent standards than formal
5  pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008).
6  However, liberal construction should only be afforded to "a plaintiff's factual
7  allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d
8  339 (1989), and a court need not accept as true "unreasonable inferences or assume
9  the truth of legal conclusions cast in the form of factual allegations," Ileto v. Glock
10 Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).

11 If a court finds the complaint should be dismissed for failure to state a claim,
12 the court has discretion to dismiss with or without leave to amend. Lopez v. Smith,
13 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it
14 appears possible the defects in the complaint could be corrected, especially if the
15 plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106
16 (9th Cir. 1995). However, if, after careful consideration, it is clear a complaint cannot
17 be cured by amendment, the court may dismiss without leave to amend. Cato, 70
18 F.3d at 1107-11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

19 **IV.**
20 **DISCUSSION**
21 **A.  THE ELEVENTH AMENDMENT BARS CLAIMS FOR**
22 **MONETARY DAMAGES AGAINST DEFENDANTS IN THEIR**
23 **OFFICIAL CAPACITY**
24 **1.  Applicable Law**
25 "The Eleventh Amendment prohibits federal courts from hearing suits brought
26 against an unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co-op., 951
27 F.2d 1050, 1053 (9th Cir. 1991) (citing Pennhurst State School & Hosp. v. Halderman,
28 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). This jurisdictional bar

6

1 includes "suits naming state agencies and departments as defendants," and it applies
2 whether a plaintiff "seek[s] damages or injunctive relief." Id.; Pennhurst State School,
3 465 U.S. at 102. As to state officials sued in their official capacity, the Eleventh
4 Amendment immunizes state officials sued in their official capacity from claims for
5 retrospective relief (including monetary damage claims) but does not immunize them
6 from claims for prospective relief (such as forward-looking injunctive relief).
7 Kentucky v. Graham, 473 U.S. 159, 169-70, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985);
8 Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Ex Parte
9 Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908).

10     **2.    Analysis**

11     Here, Plaintiff's claims against Defendants in their official capacity for
12 monetary damages are barred by the Eleventh Amendment. See Graham, 473 U.S. at
13 169-70 (holding the Eleventh Amendment bar "remains in effect when State officials
14 are sued for damages in their official capacity"). Accordingly, Plaintiff's Section 1983
15 claims against Defendants in their official capacity for monetary damages are subject
16 to dismissal.

17 **B.    FIRST AMENDMENT RETALIATION CLAIMS**

18     Here, Plaintiff alleges a First Amendment retaliation claim against all
19 Defendants based on various incidents. As discussed below, certain retaliation claims
20 against defendants Farley and Davis are subject to dismissal.

21     **1.    Applicable Law**

22     "Prisoners have a First Amendment right to file grievances against prison
23 officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d
24 1108, 1114 (9th Cir. 2012) (citation omitted); Soranno's Gasco, Inc. v. Morgan, 874
25 F.2d 1310, 1314 (9th Cir. 1989). To state a viable First Amendment retaliation claim,
26 a prisoner must allege five elements: "(1) [a]n assertion that [a prison official] took
27 some adverse action against an inmate (2) because of (3) that prisoner's protected
28 conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) (observing prisoner "must show that there were no legitimate correctional purposes motivating the actions he complained of").

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School District, 467 F.3d 755, 770 (9th Cir. 2006). Though an adverse action need not be an independent constitutional violation, inconsequential or de minimis harms do not constitute adverse actions. Watison, 668 F.3d at 1114 (to support a claim, a harm must be "more than minimal").

In addition, "[b]ecause direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." Watison, 668 F.3d at 1114 (9th Cir. 2012); Pratt, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent[.]").

**2. Analysis**

**a. Defendant Farley**

Here, Plaintiff appears to allege multiple instances of retaliation by defendant Farley. In Claim One, Plaintiff alleges defendant Farley "scratched" Plaintiff's name off of the phone list. Dkt. 1 at 5. In Claim Three, Plaintiff alleges he "has reason to believe" defendant Farley "conjured up" a note being found in the prison mail system that stated Plaintiff would be stabbed for filing too many grievances, which resulted in Plaintiff being placed in ad-seg. Id. at 11.

To the extent Plaintiff alleges these specific actions[3] by defendant Farley constitute retaliation, these claims fail. First, Plaintiff alleges no facts other than his conclusory statement that he and defendant Farley were not on "good terms" to

---

[3] The Court construes Plaintiff's allegations that defendant Farley issued a false RVR against Plaintiff in retaliation for Plaintiff threatening to file a grievance, and Plaintiff's allegations that defendant Farley approached his door in ad-seg on April 28, 2020 and threatened to have him "cut up back here" as separate retaliation claims.

1  demonstrate defendant Farley "scratched" his name off the list in response to any
2  protected conduct by Plaintiff.  See id. at 5.  In fact, Plaintiff's own allegations seem to
3  suggest his name was crossed off the list for the 1:15 p.m. timeslot because Plaintiff
4  received a medical pass for 1:00 p.m.  Moreover, Plaintiff does not allege he was
5  actually prevented from using the phone to contact his lawyer or was not able to sign
6  up for a different time slot.  Second, Plaintiff's conclusory allegations that he has
7  "reason to believe" it was defendant Farley who put a note in the mail that ultimately
8  subjected Plaintiff to ad-seg, is unsupported by any facts and insufficient to state a
9  retaliation claim.  See In re Gilead Scis. Sec. Litig., 536 F.3d at 1055.

### b. Defendant Davis

11  Plaintiff further alleges defendant Davis "endorsed" Plaintiff to a different
12  facility as part of a "campaign of harassment and retaliation."  Dkt. 1 at 13.  While
13  prisoners may not be transferred in retaliation for exercising their First Amendment
14  rights, see Pratt, 65 F.3d at 806, Plaintiff alleges no facts demonstrating defendant
15  Davis's endorsement was made because of Plaintiff filing grievances against other
16  correctional officers, or that defendant Davis even had knowledge of Plaintiff's
17  grievances against other correctional officers.

18  Accordingly, Plaintiff's First Amendment retaliation claims against defendants
19  Farley and Davis described above are subject to dismissal.

## C. EIGHTH AMENDMENT THREAT TO SAFETY CLAIMS

21  Here, Plaintiff alleges an Eighth Amendment claim based on "threats to safety"
22  against defendants Farley, Arebalo, and Graves.  As discussed below, these claims are
23  subject to dismissal.

### 1. Applicable Law

25  The Eighth Amendment protects prisoners from inhumane methods of
26  punishment and from inhumane conditions of confinement.  Morgan v. Morgensen,
27  465 F.3d 1041, 1045 (9th Cir. 2006) (as amended).  In order to state an Eighth
28  Amendment claim, a plaintiff must "objectively show that he was deprived of

something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009) (citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L. Ed. 2d 811 (1994)). "A mere threat may not state a cause of action" under the Eighth Amendment, even if it is a threat against exercising the right of access to the courts. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam).

### 2. Analysis

Here, Plaintiff alleges that after physically assaulting Plaintiff,[4] defendant Farley told Plaintiff "'if you file any more appeals on me or even think about filing any lawsuits . . . I'll make sure you end up in the hole, there may be a mysterious kite dropped on you." Dkt. 1 at 10. Plaintiff also alleges defendant Arebalo advised Plaintiff not to appeal his RVR hearing determination and stated, "it may get you fucked over and hurt." Id. Plaintiff further alleges defendant Graves told Plaintiff "it's nothing for you to end up hanging" and made reference to "what happen[ed] to Epstein". Id. at 13. These mere threats of harm, however, do not rise to the level of an Eighth Amendment violation. Gaut, 810 F.2d at 925; Ferguson v. Pagati, No. CV 12-00653-VBF-DTB, 2013 WL 3989426, at *5 (C.D. Cal. Aug. 1, 2013) (allegations of threats of physical violence, without more are insufficient to state a claim under the Eighth Amendment).

Accordingly, Plaintiff's Eighth Amendment claims against defendants Farley, Arebalo, and Graves for verbal threats are subject to dismissal.

///
///
///

---

[4] The Court construes Plaintiff's allegations that defendant Farley grabbed and squeezed Plaintiff's neck and and punched Plaintiff in the stomach as a separate Eighth Amendment excessive force claim.

10

## D. FOURTEENTH AMENDMENT DUE PROCESS CLAIMS

Here, Plaintiff alleges a Fourteenth Amendment due process claim against defendants Williams, Graves, and Davis. As discussed below, these claims are subject to dismissal.

### 1. Applicable Law

The Due Process Clause of the Fourteenth Amendment protects individuals against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (citations omitted). Due process analysis proceeds in two steps: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011).

Courts have held prisoners have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," but they do have "the right not to be deprived of a protected liberty interest without due process of law."[5] Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); see also Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (finding inmate's claims based upon falsity of charges brought by a prison counselor did not state a constitutional claim). In order to establish the deprivation of a protected liberty interest, however, a prisoner must allege an "atypical, significant

---

[5] In order to establish the denial of procedural protections afforded by due process, a prisoner must allege denial of the requirements set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), which include written notice, the right to call witnesses, the right to present documentary evidence, and the right to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. See Serrano v. Francis, 345 F.3d 1071, 1077-78 (9th Cir. 2003).

11

1  deprivation in which a State might conceivably create a liberty interest." Sandin v.
2  Conner, 515 U.S. 472, 486, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

### 2. Analysis

Here, Plaintiff alleges defendant Williams improperly rescinded Plaintiff's "level 1 33% override endorsement" and refused to discuss Plaintiff's upcoming "non-violent halftime parole date" at a classification hearing. Plaintiff, however, has no liberty interest in his classification status. See Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (holding prison regulations governing inmate classification did not create cognizable Eighth or Fourteenth Amendment liberty interests). Moreover, Plaintiff does explain how defendant Williams's failure to assign him a staff assistant or list defendant Graves as Plaintiff's staff assistant constitutes an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin, 515 U.S. at 486. To the extent alleges defendants Williams and/or Graves denied Plaintiff the procedural protections afforded by Wolff, 418 U.S. 539, this claim also fails because Plaintiff alleges no facts to show he was denied any required procedures at the hearing or that he had a right to a staff assistant. See Serrano, 345 F.3d at 1077-78. In fact, as to defendant Graves, Plaintiff fails to allege his involvement in the classification hearing, but rather, alleges he requested information from defendant Graves after the classification hearing was completed.

Similarly, Plaintiff's allegations that defendant Davis "endorsed" Plaintiff to be placed in a facility "far from his county" fails to state a due process claim because Plaintiff fails to identify any established liberty interest in avoiding being transferred to a farther prison. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 225-27 (1976); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (holding prisoner "was not entitled to a hearing prior to being transferred from federal to state prison"); Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989) (holding prisoner "has not alleged that any regulation or procedure created a substantive restriction on the prison authorities' decision to return him to the

1 penitentiary. No liberty or property interest is violated where there is a failure to
2 allege a restriction on the authorities' right to transfer.").
3     Accordingly, Plaintiff's Fourteenth Amendment claims are subject to dismissal.

## V.

## **LEAVE TO FILE A FIRST AMENDED COMPLAINT**

    For the foregoing reasons, the Complaint is subject to dismissal. As the Court is unable to determine whether amendment would be futile, leave to amend is granted. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). Plaintiff is advised that the Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in his pleading, accepted as true, to state a claim to relief that is viable on its face, Plaintiff is not required to omit any claim in order to pursue this action. However, if Plaintiff asserts a claim in his First Amended Complaint that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

    Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following three options:

    1.    Plaintiff may file a First Amended Complaint to attempt to cure the deficiencies discussed above. <u>The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the First Amended Complaint, which the Court encourages Plaintiff to use.</u>

    If Plaintiff chooses to file a First Amended Complaint, he must clearly designate on the face of the document that it is the "First Amended Complaint," it

must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form.  Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims asserted in the Complaint.  In addition, the First Amended Complaint must be complete without reference to the Complaint or any other pleading, attachment, or document.

An amended complaint supersedes the preceding complaint.  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  After amendment, the Court will treat all preceding complaints as nonexistent.  Id. **Because the Court grants Plaintiff leave to amend as to all his claims raised here, any claim raised in a preceding complaint is waived if it is not raised again in the First Amended Complaint.** Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012).

The Court advises Plaintiff that it generally will not be well-disposed toward another dismissal with leave to amend if Plaintiff files a First Amended Complaint that continues to include claims on which relief cannot be granted.  "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'"  Ismail v. Cty. of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012); see also Ferdik, 963 F.2d at 1261.  Thus, **if Plaintiff files a First Amended Complaint with claims on which relief cannot be granted, the First Amended Complaint will be dismissed without leave to amend and with prejudice.**

2. Alternatively, Plaintiff may file a notice with the Court that he intends to stand on the allegations in his Complaint.  If Plaintiff chooses to stand on the Complaint despite the deficiencies in the claims identified above, then the Court will submit a recommendation to the assigned district judge **that the deficient claims discussed in this Order be dismissed with prejudice for failure to state a claim**, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.  If the assigned

district judge accepts the findings and recommendations of the undersigned Magistrate Judge and dismisses the deficient claims discussed in this Order, the Court will issue a separate order regarding service of any claims remaining in the Complaint at that time.

      3.    Finally, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a).  <u>The Clerk of Court is directed to mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff to use if he chooses to voluntarily dismiss the action.</u>

**Plaintiff is explicitly cautioned that failure to timely respond to this Order will result in this action being dismissed without prejudice for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Dated:  August 10, 2020

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge